# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLENVERT GREEN,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:16-CV-2046 |
| v. | : | (Judge Caputo) |
| **USP CANNAN,** *et al.,* | : | |
| Defendants | : | |

# M E M O R A N D U M

## I.   Background

Plaintiff, Glenvert Green an inmate formerly housed at the Canaan United State Penitentiary (USP-Canaan), in Waymart, Pennsylvania,[1] filed this *Bivens*[2] action, 28 U.S.C. § 1331, action on October 1, 2016. (ECF No. 1.) He claims

---

[1] Mr. Green is presently incarcerated at USP-Lewisburg, in Lewisburg, Pennsylvania. *See* Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited March 20, 2018).

[2] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2893, 2909 – 10, 57 L.Ed.2d 895 (1978).

Defendants were deliberately indifferent to his ongoing medical needs following the rupture of his right Achilles tendon. This matter proceeds on an amended complaint. (ECF No. 20.) Named as Defendants are the following USP-Canaan employees: Mid-Level Practitioner Rhea Carey; Mid-Level Practitioner Kenneth Kaiser; Nurse Michelle Szymanski; Emergency Medical Technician (EMT) Blake Glucksnis; and Health Services Administrator Shawn Taylor.[3] (*Id*.)

Presently pending before the Court is the Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56 based on Plaintiff's failure to exhaust his available administrative remedies. (ECF No. 30.) For the reasons set forth below, the Court will grant Defendants' motion for summary judgment.

## II. Motion for Summary Judgment Standard of Review

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

---

[3] The Court will use the spelling of Defendants' surnames as provided by Defendants. *See* ECF No. 29, Defendants' Waiver of the Service of Summons.

106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 2509 - 10, 91 L.Ed.2d 202 (1986).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (internal citations omitted). Material facts are those which "might affect the outcome of the suit under the governing substantive law." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). Where contradictory facts exist, the court may not make credibility determinations or weigh the evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 - 51, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) (internal quotation marks and citations omitted); *Paradisis v. Englewood Hosp. Med. Ctr.*, 680 F. App'x 131, 135 (3d Cir. 2017). In reviewing a motion for summary judgment, the court must view all facts and draw all reasonable inferences "in the light most favorable to the party opposing the motion." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotation marks omitted).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record that demonstrate the absence of a genuine issue of

material fact. *Santini v. Fuentes*, 795 F.3d 410 (3d Cir. 2015) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2553). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) - (B). To withstand summary judgment, the non-moving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (citation omitted). The non-moving party cannot rest on speculation and conjecture when opposing a motion for summary judgment. *In re Wellbutrin SL Antitrust Litigation Indirect Purchaser Class*, 868 F.3d 132, 167 (3d Cir. 2017). As such, the non-moving party cannot satisfy the summary judgment burden with an affidavit or declaration that sets forth opinions or conclusions rather than supported facts. *Gonzalez v. Sec'y. of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012). Unsubstantiated arguments made in briefs are not evidence considered by the court. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106

S.Ct. at 2511. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**III.     Relevant Allegations of the Amended Complaint**

In the early evening of July 16, 2016, Mr. Green was playing basketball at USP-Canaan when he injured his right ankle. (ECF No. 20.)  Initially EMT Glucksnis and Mr. Kaiser thought Mr. Green suffered from a high ankle sprain.  Ten days later Mr. Kaiser "discovered" that Mr. Green suffered from a torn Achilles tendon.  Prison officials scheduled Mr. Green for reparative surgery.

On July 30, 2016, Dr. Jeffery Morgaman repaired the ruptured at an outside hospital.  Mr. Green received twenty or thirty staples in his ankle, which the surgeon cast.  The following day Mr. Green returned to USP-Canaan.  Prison medical staff did not provide Plaintiff the same narcotic painkillers he received in the hospital.  Medical staff provided Plaintiff Ibuprofen.  At some point Mr. Kaiser allegedly told Plaintiff not to take the Ibuprofen as it would damage his stomach, yet this was the only pain medication he was given.

Medical staff did not see Mr. Green August 2 – 8, 2016 because the institution was on lockdown status.  Mr. Green then visited the medical unit daily seeking medical care.  On August 17, 2016, Health Services Administrator Taylor threatened Plaintiff with a misconduct if he continued to harass the medical staff.  Two days later, while in the medical unit, Mr. Green received a misconduct for allegedly

masturbating in front of a female staff member. He was then placed in the institution's Special Housing Unit (SHU).

While in the SHU, Mr. Green's cast started to deteriorate and smell after it got wet. Medical staff visiting the SHU ignored Plaintiff's request for help with his cast. Eventually EMT Glucksnis saw the tattered cast. Three days later a nurse rewrapped Plaintiff's cast.

In September 2016, the surgeon removed Plaintiff's cast and staples at the Waymart Orthopedic Clinic. (*Id*.) As Plaintiff feared, several of his staples had dislodged. The surgeon ordered wound care for Mr. Green upon his return to USP-Canaan. During a medical encounter with EMT Glucksnis determined that the surgeon had left a staple in Plaintiff's ankle. The next day medical staff removed the staple.

Mr. Green states he filed a BP-8 "about [his] injury and didn't receive a response after waiting nearly 14 days then out of the blue [Plaintiff] was transfered (sic) on a writ for new criminal charges". (*Id.*, p. 6.) Mr. Green claims he was "not only denied [his] administrative remedies by [his] unit team but due to the short notice [given him] going on writ [his] remedies were unavailable." (*Id.*)

## IV. Statement of Undisputed Facts[4]

The Federal Bureau of Prisons has established a four-step Administrative Remedy Program for inmates to resolve concerns related to their confinement. (ECF No. 34, Defs.' Statement of Material Facts (DSMF), ¶ 1; *see* 28 C.F.R. § 542.10 *et seq*. (2005)). First, an inmate must seek to resolve the issue informally with prison staff using a BP-8 form. (DSMF ¶ 2, citing 28 C.F.R. 542.13(a)). If the informal complaint does not resolve the dispute, the prisoner may file a formal administrative remedy request, BP-9, to the Warden of the institution of confinement. (DSMF ¶ 3, citing 28 C.F.R. 542.13 – 14.) The inmate must submit the BP-9 form within twenty calendar days following the date on which the basis of the grievance occurred, except where the prisoner demonstrates a valid reason for delay. (ECF No. 34-1, Declaration of Attorney Advisor Michael Figgsganter (Figgsganter Decl.), ¶ 7; *see also* 28 C.F.R. § 542.14(a)). If the Warden denies the BP-9 request, the inmate may file an appeal with the Regional Director using a BP-10 form. (DSMF ¶ 4; citing 28 C.F.R. § 542.15.) An inmate must submit the BP-10 within twenty calendar days of the date the Warden responded to the BP-9, with the exception

---

[4] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." Pa. M.D. Local Rule 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issue of trial. *See Id*. Unless otherwise noted, the factual background herein derives from the Defendants' Rule 56.1 statement of material facts. (ECF No. 34.) Mr. Green filed two briefs in opposition to Defendants' motion; however, he did not file a response to Defendants' statement of material facts. (ECF Nos. 35 and 38.) Accordingly, the Court deems the facts set forth by Defendants to be undisputed. *See* Pa. M.D. Local Rule 56.1.

- 7 -

again where there are valid reasons for delay. (Figgsganter Decl. ¶ 7, citing 28 C.F.R. 542.15(a).) As a last step, where the prisoner is not satisfied with the Regional Director's response, he or she may submit an appeal to the BOP Office of General Counsel, located in the Center Office, using a BP-11 form. (DSMF ¶ 5.) The inmate must submit the BP-11 within thirty calendar days of the date the Regional Director's response to the BP-10, with the same exception for valid reasons for delay. (Figgsganter Decl. ¶ 7, citing 28 C.F.R. 542.15(a).) An inmate administrative appeal is not considered fully exhausted until reviewed by the BOP's Central Office on the merits. (DSMF ¶ 7, citing 28 C.F.R. 542.15.) If the BOP rejects a remedy or appeal, it is returned to the inmate and the inmate is provided with a written notice explaining the reason for the rejection. The BOP does not retain copies of rejected filings. (DSMF ¶ 6; Figgsganter Decl. ¶ 7.)

The Administrative Remedy Program instructs that the absence of a response within the time allotted for reply, including any extensions, may be considered a denial of the inmate's request at that level. *See* 28 C.F.R. § 542.18.

When an inmate demonstrates a valid reason for his delay in submitting an administrative request or appeal, the BOP can extend the time limits for his submission. *See* 28 C.F.R. 542.15(a). Valid reasons for a delay in submitting a request or appeal may include an extended period in-transit during which the inmate was separated from documents necessary to prepare his request or appeal or when

an inmate is physically incapable of preparing a request or appeal. *See* 28 C.F.R. § 542.14.

On March 29, 2017, Attorney Advisor Figgsganter conducted a search of Mr. Green's Administrative Remedy records to determine whether he had filed an administrative remedy concerning the medical issues set forth in his complaint. (DSMF ¶ 8; Figgsganter Decl. at ¶ 8.) At that time, Mr. Green had only filed one administrative remedy, on March 24, 2017, concerning a Disciplinary Hearing Officer appeal. (DSMF ¶¶ 8 – 9; ECF No. 34-1, Administrative Remedy Generalized Retrieval for Glenvert Green, p. 14.)

**V.      Discussion**

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust their administrative remedies before filing suit in court. 42 U.S.C. § 1997e(a). The PLRA "mandates that an inmate exhaust … administrative remedies … before bringing suit to challenge prison conditions." *Ross v. Blake*, _____U.S. _____, _____, 136 S.Ct. 1850, 1854 - 555, 195 L.Ed.2d 117 (2016) (quotation omitted); *see also Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (same).

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). The exhaustion requirement applies

equally to inmate civil-rights claims brought under 42 U.S.C. § 1983 or *Bivens*. *Id.* at 524, 122 S.Ct. at 988.

A prisoner need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *Ross*, ____ U.S. at ____, 136 S.Ct. at 1855. An administrative remedy is "'available' [if it] is 'capable of use for the accomplishment of a purpose'". *Id.* at ____, 136 S.Ct. at 1858 – 59 (quoting *Booth*, 532 U.S. at 737, 121 S.Ct. at 1823). The Supreme Court in *Ross* outlined three circumstances when an administrative remedy is unavailable and the prisoner's duty to exhaust available remedies "does not come into play." *Id.* at ____, 136 S.Ct. at 1859.

> (1) 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) it is 'so opaque that i[t] becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'

*Shumanis v. Lehigh Cty.*, 675 F. App'x 145, 148 (3d Cir. 2017) (quoting *Ross*, ____ U.S. at ____, 136 S.Ct. at 1859 – 60).

The PLRA also mandates "proper exhaustion" of all the agency's deadlines and other procedural rules pertaining to its administrative remedy process. *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006). "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007)

(quoting *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004)). "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" as they are "defined … by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 922 - 23, 166 L.Ed.2d 798 (2007) (quoting *Ngo*, 548 U.S. 88, 126 S.Ct. at 2384). "[I]t is the prison's [administrative remedy] requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218, 127 S.Ct. at 923. Failure to comply substantially with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill*, 372 F.3d at 227 – 32; *see also Williams*, 482 F.3d at 639 (inmate "procedurally defaulted" when he failed to comply with the requirements of the prison's grievance procedures).

Finally, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013).

In the present matter, the Defendants seek summary judgment due to Mr. Green's failure to exhaust his administrative remedies prior to filing this action. Defendants have produced evidence that the sole administrative remedy filed by Mr. Green in March 2017 does not concern the medical issues presented in his Amended Complaint. (ECF No. 33, Br. in Supp. Mot. Summ. J.) In his opposition brief Mr. Green asserts that his administrative remedies were unavailable to him for two reasons: (1) the SHU unit management team played "hide and seek" with the

proper administrative remedy forms (ECF No. 38); and (2) he on writ from USP-Canaan from October 5, 2016 until January 5, 2017 (ECF No. 35).

The Administrative Remedy Process requires an inmate to complete the informal resolution process and submit a formal administrative remedy request within twenty calendar days following the date on which the basis for the request occurred. *See* 28 C.F.R. § 542.14. In his Amended Complaint, Mr. Green states he filed a BP-8 "about [his] injury and didn't receive a response after waiting nearly 14 days then out of the blue [Plaintiff] was transfered (sic) on a writ for new criminal charges". (ECF No. 20, p. 6.) Mr. Green never suggests that he filed a BP-8 concerning his ankle care prior to entering the SHU. Mr. Green filed his BP-8 concerning his "injury" sometime after August 20, 2016, when his staples were removed. He also states he filed BP-8 on other issues (his mail and medical records) that he did receive answers to but with respect to his medical BP-8, his Unit Team, all non-defendants, told him they "haven't received anything yet". (*Id.*, p. 5.) Plaintiff provides no affirmative evidence demonstrating he did, or could not, avail himself of the Administrative Remedy Procedure prior to his SHU placement to raise questions concerning his care following his July 16, 2016 injury. Likewise, he offers no evidence to support his assertion that his entire SHU Unit Team would not provide him with appropriate administrative remedy forms or that he could not obtain the requisite forms from unit officers. Additionally, to the extent Mr. Green suggests that his BP-8 concerning his injury was pending when transferred "out of the blue,"

this does not demonstrate the unavailability of the administrative remedy process prior to Plaintiff initiating this action. First, Mr. Green does not provide any evidence to demonstrate that his BP-8 was pending on October 5, 2016, the date of his transfer. In addition, he fails to produce any affirmative evidence to demonstrate his efforts to seek an extension of time to file his administrative remedy due to his transfer. Finally, as Defendants point out, Mr. Green placed his Complaint in the prison mail system on October 1, 2016, prior to his transfer. (*See* ECF No. 1, p. 3.) Thus, Mr. Green initiated this action prior to exhausting his available administrative remedies as Defendants argue. Additionally, if the Court is to believe Mr. Green's assertion that his BP-8 was pending for fourteen days when he was suddenly transferred on October 5, the Court can conclude that Mr. Green's BP-8 was pending approximately nine or ten days, when Plaintiff elected to initiate this action. It is clear from the record before the Court that Mr. Green prematurely filed this action before either waiting for a response to his informal remedy, or an administrative remedy, or seeking an enlargement of time to file his administrative remedy request based on his October 5, 2016, transfer from USP-Canaan. In addition Mr. Green fails to present any affirmative evidence that he was misled to believe that he would not receive a response to his informal grievance. Rather he states that the members of his Unit Team responded that "haven't received anything yet" concerning his BP-8, not that he would not receive a response. Additionally, Mr. Green fails to present any affirmative evidence, beyond the allegations of his

pleadings in support of his right to relief.  Based on the foregoing, Mr. Green has failed to meet his burden with respect to the exhaustion of his claims.  Defendants therefore are entitled to an entry of summary judgment in their favor.

An appropriate order follows.


**Dated: April 4, 2018**             /s/ A. Richard Caputo
                                                     **A. RICHARD CAPUTO**
                                                     **United States District Judge**